SEAN KENNEDY (No. 145632)
Federal Public Defender
(Sean_Kennedy@fd.org)
PEDRO V. CASTILLO (No. 159153)
(Pedro_Castillo@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California  90012
Telephone (213) 894-2980
Facsimile (213) 894-0081

Attorneys for Defendant
KEITH JAMES HUDSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 11-1175-SJO |
| Plaintiff, | **NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATIONS; AND EXHIBIT** |
| v. | |
| KEITH JAMES HUDSON, | |
| Defendant. | |

TO:    UNITED STATES ATTORNEY ANDRÉ BIROTTE, AND ASSISTANT UNITED STATES ATTORNEY WENDY T. WU:

PLEASE TAKE NOTICE that on May 31, 2012, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable S. James Otero, United States District Judge, defendant Keith James Hudson will move as follows:

///

///

///

## MOTION

Defendant Keith James Hudson, by and through his counsel of record, Pedro V. Castillo, Deputy Federal Public Defender, hereby moves this Honorable Court for an order suppressing evidence of any and all statements made by Mr. Hudson to federal agents on December 1, 2010, as these statements were made in violation of <u>Miranda</u> and were not voluntary.

This motion is based on the attached Memorandum of Points and Authorities, declarations, exhibit, all files and records in this case, and any further evidence presented prior to, or at the hearing on this motion.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 24, 2012          By  /s/  Pedro V. Castillo
                                   PEDRO V. CASTILLO
                                   Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION[1]

The indictment against Keith James Hudson alleges a conspiracy between him, Tyler Shrier, and Ryder Finney to extort certain poker celebrities by tapping into the victims' email accounts and obtaining intimate photographs which they would use to extort the celebrities for money.

On December 1, 2010, at about 8:30 a.m. in the morning, FBI agents arrived at Keith James Hudson's residence.[2] The agents went there armed with a search warrant for Mr. Hudson's computer, and questioned him at length.[3] They came in the early morning, were armed, knocked down his door, took him away from his three-year-old daughter, handcuffed him, and searched his house and computers. For over two hours, they asked him questions. Before the questioning, the agents failed to properly advise Mr. Hudson of his Miranda rights, and further failed to obtain a proper waiver of these rights. Because of this failure to properly advise him, and a failure to determine whether Mr. Hudson understood those rights, and the failure to obtain a valid waiver of his rights, Mr. Hudson now requests that the Court suppress any statements which he made to law enforcement agents that day. Further, Mr. Hudson maintains that any statements made that day were not voluntary for the reasons set forth below, and should also be suppressed on that basis.

---

[1] The facts set forth in this introduction are derived from all of the discovery provided to defense counsel by the Government, attached exhibit, declarations, and any other evidence presented to the Court at, prior to, or during the hearing on this matter.

[2] Although the agents had a search warrant for the home, they did not have an arrest warrant for Mr. Hudson.

[3] Attached as Exhibit "A" is a copy of a draft transcript provided by the Government of Mr. Hudson's interrogation by FBI agents which took place on December 1, 2010.

3

# II.
# ARGUMENT

## A. THE COURT SHOULD SUPPRESS THE STATEMENTS.

The government bears the burden of demonstrating valid Miranda warnings were given prior to a custodial interrogation. United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994); see also United States v. Mendoza, 530 U.S. 428, 439-41 (2000) (discussing constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436, 444 (1966) and the need to safeguard "precious Fifth Amendment rights"); see also 18 U.S.C. § 3501.

The government also bears the burden of proving that a defendant's statements were uncoerced and voluntary given under 18 U.S.C. § 3501(a). Unless and until the government meets these burdens in this case, Mr. Hudson's statements must be suppressed.

### 1. Mr. Hudson's Statements were Made in Violation of *Miranda*.

#### a. Valid *Miranda* Warnings Must Precede Custodial Interrogation.

The prosecution may not use Mr. Hudson's statements unless it demonstrates the use of procedural safeguards effective to secure the Mr. Hudson's Fifth Amendment privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

Mr. Hudson was questioned by FBI agents who came to his home. He was handcuffed and taken out of the house.[4] He was not permitted to leave. For over two hours, agents questioned him. He was plainly in the custody of law enforcement officers. As noted by the Ninth Circuit in United States v. Craighead,

---

[4] See Declaration of Keith James Hudson, attached to this pleading.

4

1     The home occupies a special place in the pantheon of constitutional rights.
2 Under the First Amendment, the "State has no business telling a man, sitting
3 alone in his house, what books he may read or what films he may watch."
4 Stanley v. Georgia, 394 U.S. 557, 565, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).
5 The Second Amendment prohibits a federal "ban on handgun possession in the
6 home." District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 2822, 171
7 L.Ed.2d 637 (2008). The Third Amendment forbids quartering soldiers "in any
8 house" in time of peace "without the consent of the Owner." U.S. Const.
9 amend. III. The Fourth Amendment protects us against unreasonable searches
10 or seizures in our "persons, houses, papers, and effects." Id. amend. IV.
11 539 F.3d 1073, 1077 (9th Cir. 2008) (finding defendant interrogated at home to have
12 been in custody for Miranda purposes).
13     Where, as here, the home became a police-dominated environment, a defendant
14 is in custody for Miranda purposes. Id.; see also United States v. Revels, 510 F.3d
15 1269, 1275 (10th Cir.2007) (concluding that the suspect's home had become a
16 "police-dominated environment" because "the facts belie any conclusion that [the
17 suspect's] home, on the morning of the questioning at issue, was the traditional
18 comfortable environment that we normally would consider a neutral location for
19 questioning."); United States v. Mittel–Carey, 493 F.3d 36, 40 (1st Cir.2007) (finding
20 suspect was in custody although interrogated in his home because of the "level of
21 physical control that the agents exercised over" the suspect); Sprosty v. Buchler, 79
22 F.3d 635, 641 (7th Cir.1996) ("More important than the familiarity of the
23 surroundings where [the suspect] was being held is the degree to which the police
24 dominated the scene."); United States v. Griffin, 922 F.2d 1343, 1354–55 (8th
25 Cir.1990) ("Questioning which occurs in the suspect's own home may provide a
26 margin of comfort, but ... the setting of the interrogation is not so important to the
27 inquiry as the question of police domination of that setting."). Here, Mr. Hudson was
28

1  handcuffed, separated from others, and interrogated for over two hours.  He was
2  plainly in custody.  Craighead, 539 F.3d at 1077-88.
3       Accordingly, unless and until the government shows that the agents properly
4  administered the Miranda warnings, the government cannot use evidence obtained as a
5  result of any custodial interrogation that occurred during his questioning.  Miranda,
6  384 U.S. at 479; Craighead, 539 F.3d at 1077.

### b. The Government Cannot Demonstrate a Voluntary, Knowing, and Intelligent Waiver of Mr. Hudson's Rights.

10       When interrogation occurs without the presence of an attorney and statements
11  are taken, a *heavy* burden rests on the government to demonstrate that the defendant
12  intelligently and voluntarily waived his privilege against self-incrimination and his
13  right to retained or appointed counsel.  Miranda, 384 U.S. at 475 (emphasis added).
14  The standard of proof for a waiver of these constitutional rights is high.  Miranda, 384
15  U.S. at 475.  See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the
16  burden on the government is great, the court must indulge every reasonable
17  presumption against waiver of fundamental constitutional rights).
18       It is undisputed that, to be effective, a waiver of the right to remain silent and
19  the right to counsel must be made knowingly, intelligently, and voluntarily.
20  Schneckloth v. Bustamonte, 412 U.S. 218 (1973).[5]  To satisfy this burden, the
21  prosecution must introduce evidence sufficient to establish "that under the 'totality of
22  the circumstances,' the defendant was aware of 'the nature of the right being
23  abandoned and the consequences of the decision to abandon it." United States v.
24  Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412,
25  421 (1986)).

---

[5] Counsel for the government has confirmed to defense counsel that the agents did not obtain a written waiver of Mr. Hudson's Miranda rights.

1    The validity of the waiver depends upon the particular facts and circumstances
2 surrounding the case, including the background, experience, and conduct of the
3 accused.  Edwards v. Arizona, 451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S.
4 458, 464 (1983); See also United States v. Heldt, 745 F.2d at 1277; United States v.
5 McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981).  In Derrick v. Peterson, 924 F.2d 813
6 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda
7 waiver requires a two prong analysis: the waiver must be both (1) voluntary, and
8 (2) knowing and intelligent.  Id. at 820.
9    The voluntariness prong of this analysis "is equivalent to the voluntariness
10 inquiry under the [Fifth] Amendment . . .."  Id.  The second prong, requiring that the
11 waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver
12 [was] made with a full awareness both of the nature of the right being abandoned and
13 the consequences of the decision to abandon it."  Id. at 820-21 (quoting Colorado v.
14 Spring, 479 U.S. 564, 573 (1987)).  This inquiry requires that the Court determine
15 whether "the requisite level of comprehension" existed before the purported waiver
16 may be upheld.  Id.  Thus, "[o]nly if the `totality of the circumstances surrounding the
17 interrogation' reveal *both* an uncoerced choice *and* the requisite level of
18 comprehension may a court properly conclude that the Miranda rights have been
19 waived."  Id. (quoting Colorado v. Spring, 479 U.S. at 573) (emphasis in original)
20 (citations omitted)).
21    Under prevailing Ninth Circuit law, the government bears the burden of
22 demonstrating a meaningful Miranda waiver by clear and convincing evidence.  See
23 Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc) (constitutional rights may
24 ordinarily be waived only if it can be established by clear and convincing evidence
25 that the waiver is voluntary, knowing, and intelligent) (citations omitted).  Moreover,
26 this Court must "indulge every reasonable presumption against waiver of fundamental
27 constitutional rights."  Id. (citations omitted);  see also Garibay, 143 F.3d at 536
28

1  ("There is a presumption against waiver."). Unless and until the prosecution meets its
2  burden of demonstrating through <u>evidence</u> that adequate <u>Miranda</u> warnings were
3  given and that Mr. Hudson knowingly and intelligently waived his rights, the
4  statements must be suppressed. <u>Miranda</u>, 384 U.S. at 479.

5      After the agents broke down his door, took him out of his house, and placed
6  him in handcuffs, Mr. Hudson asked, "Am I under arrest.?" "Do I need a lawyer?"
7  and "Why am I being handcuffed?" <u>See</u> Declaration of Keith James Hudson.
8  Eventually, he was brought back into the house and questioned in his daughter's
9  bedroom. Before being advised of his <u>Miranda</u> rights, Mr. Hudson stated, "I'm a little
10 scared."[6] The FBI agent plowed ahead with the <u>Miranda</u> rights. The FBI agent failed
11 to ask whether Mr. Hudson understood these rights and whether he waived those
12 rights.[7] Both of these questions are key. Absent a showing by the Government that
13 Mr. Hudson both understood his rights and voluntarily abandoned those rights and
14 chose to make a statement, any statement or statements provided must be suppressed.

15     The argument is simple– if someone specifically asked what the law
16 enforcement agent wants to ask them questions about, and that law enforcement agent
17 refused to answer their question, then how could they possibly knowingly invoke or
18 waive their Fifth Amendment rights? After all, <u>Miranda</u> is not a binary switch that is
19 either "on" or "off." The rights may be waived (or conversely invoked) selectively
20 depending on the citizen's decision. <u>See</u> <u>Egger v. United States</u>11:, 509 F. 2d 745,
21 747 (9th Cir.), <u>cert</u>. <u>Denied</u>, 423 U.S. 842 (1975) (recognizing that the Fifth
22 Amendment waiver may be selective).

---

[6]    <u>See</u> Exhibit "A" at bate stamp number 970, near the bottom of the page.

[7]    In fact, the Agent rushed through the advisement of Miranda rights and at no point asked Mr. Hudson if he understood each and every right and knowingly waived each and every right. The agent said "I just want to make sure you understand you have the right to remain silent. I mean you know the deal right? You've been around a couple of times in the past..." <u>See</u> Exhibit "A" at Bates 971, at the bottom of the page.

Further, during the Miranda advisement, the agent prefaced the rights by saying "I think they got a hold of your girlfriend Melanie to come and pick up your daughter." Also, after the advisement of rights, the agent stated "Um so like I said, we got a hold of your girlfriend ah she is on her way to pick up your daughter." See Exhibit "A" at bate stamp number 971, bottom of page. Such statements were used to induce a statement from Mr. Hudson, and those statements, intermingled with the Miranda warnings, in essence, rendered the Miranda warnings ineffective.

### 2. Mr. Hudson's Statements Were Not Voluntary.

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. Schneckloth, 412 U.S. at 226. Here, Mr. Hudson was scared. Agents knocked down his door and came in with guns drawn. At the time, he was asleep with his three-year-old daughter. He was taken outside of the house and was handcuffed. Officers were in and out of his house. See Declaration of Keith James Hudson. He was not asked whether he understood his Miranda rights, or whether he wished to waived those rights. Mr. Hudson was bullied by the agents and told he would be facing a large number of years he would serve in prison if convicted.[8] He felt as though he had no choice but to speak with the agents. For these reasons, it cannot be said that his statements were voluntarily made.

Until the government meets its burden of showing all Mr. Hudson's statements were voluntary, they must be suppressed as involuntary so long as the government intends to use them in its case-in-chief. 18 U.S.C. § 3501(a).

///

---

[8] See Exhibit "A" at Bates 979, middle of the page. The agents also deceived Mr. Hudson, telling him, "We're the Cyber Department with the FBI. Ok so I can further prove my case against you and Tyler. So this is where you get to decide if you want to be a witness or if you want to be a suspect." Id.

## II.
## CONCLUSION

For the foregoing reasons, Mr. Hudson respectfully requests that the Court suppress any and all statements that he made to law enforcement officers on December 1, 2010.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 24, 2012          By   */s/ Pedro V. Castillo*
                                    PEDRO V. CASTILLO
                                    Deputy Federal Public Defender